67 F.3d 308
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Carl A. SYLVESTER, Plaintiff-Appellant,
v.
DOUGLAS FOREST PROTECTIVE ASSOCIATION, and Kenneth Lane,
Defendant-Appellees.
 No. 94-35404.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 11, 1995.
Decided Sept. 27, 1995.
 
 Before: SCHROEDER, REINHARDT, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Carl A. Sylvester appeals an award of summary judgment entered in favor of his employer Douglas Forest Protective Association (DFPA). Sylvester asserted five claims in the district court, four of which he appeals: 1) a claim for overtime pay pursuant to the Fair Labor Standards Act, 29 U.S.C. Sec. 201 et seq.; 2) a claim for overtime pay pursuant to Oregon's wage and hours laws, ORS 653.261; 3) a breach of contract claim; and 4) a claim pursuant to 42 U.S.C. Sec. 1983 alleging a due process deprivation. We affirm.
 
 
 3
 Sylvester was fired for an incident during which he yelled, swore, and threw rocks at a fellow employee of DFPA. He admits that he committed the acts for which he was terminated, but protests the discharge. Sylvester also has another claim. He was employed as an Assistant Unit Forester and was required to be on-call twenty-four hours a day, seven days a week during "fire season" (a period of time beginning possibly as early as April of each year and ending as late as November[1]). He now seeks overtime pay for the period he was on-call.
 
 Fair Labor Standards Act
 
 4
 Berry v. County of Sonoma, 30 F.3d 1174 (9th Cir.1994), controls the overtime claim. In Berry, we held that coroners who were on-call to receive death reports at any time of the day or night; who had to respond as soon as possible to death reports; and who were required to answer a page or telephone call within fifteen minutes were, as a matter of law, not entitled to overtime pay pursuant to the Fair Labor Standards Act, 29 U.S.C. Secs. 201 et seq. Id. at 1178. We are bound by that decision.
 
 
 5
 Upon receiving a death report, the Berry coroners were required to conduct investigations by telephone or by making visits to the scene of death depending on the nature of the case. Id. Like Sylvester, the coroners claimed their personal activities were restricted by the requirement that they be immediately available while on-call. Id. We concluded otherwise.
 
 
 6
 The evidence presented by Sylvester, even when viewed in the light most favorable to him, fails to bring his case outside the dictates of Berry. An explanation of the evidence in light of the "illustrative, non-exhaustive factors" we employed in Berry reveals that Sylvester was no more restricted than the Berry coroners. See at 1183 (quoting the seven factors articulated in Owens v. Local No. 169, 971 F.2d 347, 351 (9th Cir.1992). A comparison of the two cases follows:
 
 
 7
 (1) Whether there was an on-premises living requirement: Sylvester, like the Berry coroners, was on-call at his home, not at a morgue or fire station.
 
 
 8
 (2) Whether there were excessive geographical restrictions on the employee's movements: In Berry, the coroners were not required to return to the employer's premises. Instead, they were required to answer a page or telephone call within fifteen minutes and then respond to death reports as soon as possible, frequently in person. Id. at 1178. We concluded that these restrictions did not impose an excessive geographical restriction on the coroners. Id. at 1185. Like the Berry coroners, Sylvester was not required to return to the employer's premises, although, he, too, was required to respond to the calls as soon as possible. Moreover, Sylvester also was not required to answer every call in person. Instead, he could send out a crew on some occasions. The limitations on Sylvester did not result in any greater geographical restriction than in the case of the coroners.
 
 
 9
 (3) Whether the frequency of calls was unduly restrictive: The coroners in Berry received around one call per 4 hours on-call. Id. at 1186 n. 8. Sylvester received approximately 1 to 2 recorded calls a day. Specifically, in a three month period in 1992, dispatch logs indicate that Sylvester received 137 contacts by radio. In addition, there is evidence that he received an unspecified number of radio calls that did not originate in the dispatch office as well as telephone calls that were not recorded by dispatch. No record was kept of these calls and no estimate of the number was offered. There is no indication whether there was one such call a week or several per day. In the absence of more specific statements, we are unable to draw any helpful inference from these vague additional assertions.
 
 
 10
 (4) Whether a fixed time limit for response was unduly restrictive: In concluding in Berry that the response time imposed upon the coroners was not unduly restrictive, we analyzed the same criteria we considered in determining the restrictiveness of their geographical limitations (factor (2) analyzed above). Because the factor (2) criteria in Sylvester's case are similar to those that were present in the case of the coroners, we conclude that the response time imposes no greater restriction upon Sylvester than was imposed in Berry.
 
 
 11
 (5) Whether the on-call employee could easily trade on-call responsibilities: The parties did not present evidence as to whether Sylvester could easily trade on-call responsibilities.
 
 
 12
 (6) Whether use of a pager could ease restrictions: Unlike the coroners, Sylvester could not use a pager to ease restrictions; instead, he was furnished with a portable radio. We discuss this fact below.
 
 
 13
 (7) Whether the employee had actually engaged in personal activities during call-in time: The coroners in Berry socialized with friends and family, dined out, shopped, read, watched television and enjoyed hobbies such as gardening, working on antique cars, leather crafts and photography. Id. at 1185. Likewise, Sylvester actually engaged in personal activities while monitoring the radio. He and his wife testified in their depositions that Sylvester participated in many personal activities while on-call, such as eating dinner with his family both at home and at restaurants, target shooting, and engaging in his hobby of woodworking. Here, we see no significant difference between the two cases.
 
 
 14
 Finally, for what it's worth, the agreement between Sylvester and DFPA cannot be distinguished from the overtime compensation agreement in Berry. Id. at 1180-81.
 
 
 15
 The only factor that could possibly suggest that Sylvester's freedom to engage in personal activities was more inhibited than the coroners' in Berry is the fact that Sylvester could not use a pager. We do not believe that the fact that a pager may be a quieter or more convenient portable communication device than a portable radio is sufficient to permit us to reach conflicting results in two cases that are otherwise so similar.
 
 
 16
 Therefore, even drawing all inferences in Sylvester's favor, the predominant factors in determining whether on-call time is compensable, as construed by this court in Berry, require the conclusion that the time in question is not compensable. Accordingly, we are compelled to hold that there are not material disputes of fact such that a reasonable jury could conclude that the time Sylvester spent on-call is compensable overtime under the FLSA. Anderson v. Liberty, 477 U.S. 242, 256-57 (1986). The grant of summary judgment on this claim was proper.
 
 Oregon Overtime Pay
 
 17
 As both parties concede, the facts relevant to Sylvester's claim for compensation under Oregon's wage and hour law, ORS Chapter 653 are the same as in his federal claim. OAR 839-20-041(3); 29 C.F.R. Sec. 785.17. The law is also similar. Because the district court properly granted summary judgment on Sylvester's FLSA claims, its grant of summary judgment on the state claims is likewise proper.
 
 Breach of Contract
 
 18
 Sylvester argues that summary judgment on his breach of contract claim was improper because the "real" reason for his termination is a material fact in dispute. He supports this contention by asserting that (1) he can only be fired for serious misconduct and (2) DFPA did not consider the rock-throwing incident to be misconduct of a serious nature. However, one of the two principal premises of his contention is erroneous. The probative evidence on the question whether DFPA considered the incident to be serious all supports DFPA's contention that it did. Sylvester's opinion to the contrary does not create a genuine issue of material fact. In any event, we note that because the Employee Handbook makes it clear that Sylvester could be terminated for any form of misconduct that DFPA deemed serious enough to warrant dismissal (on the basis of a single flagrant act or a series of lesser offenses), it is not material to the breach of contract claim whether Sylvester was terminated for a single act or multiple acts.
 
 Due Process
 
 19
 Finally, we conclude that there is no material dispute of fact related to Sylvester's due process claim. Disputes of fact as to whether DFPA is a state actor are not material because Sylvester was afforded due process prior to his termination. The essential requirements of due process are notice and an opportunity to respond. See e.g., Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985). Sylvester was advised by his supervisor that he could be terminated for the rock-throwing incident and was given an opportunity to explain the incident, both in person and in writing. As we have concluded above, there is no genuine dispute of fact that he was terminated on that ground.
 
 
 20
 We hold that the district court properly granted summary judgment on Sylvester's claims. The judgment of the district court is
 
 
 21
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 According to appellant, fire season begins in approximately April and continues until November each year. Appellees, on the other hand, say fire season begins in June and ends in September